25 C.C.P.A.(Patents)

### URFER v. KOLLSMAN.

Patent Appeal No. 3972.

Court of Customs and Patent Appeals.

June 6, 1938.

LENROOT, Associate Judge, dissenting.

McConkey & Smith, of Washington, D. C., and Stephen Cerstvik, of East Orange, N. J. (F. Bascom Smith, of New York City, of counsel), for appellant.

Leonard Day, of New York City, for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming that of the Examiner of Interferences in awarding priority of invention of the subject matter of three counts of an interference to the senior party Kollsman.

The counts originated as claims in the Urfer application, which was assigned to the Bendix Aviation Corporation, filed April 6, 1932, and were copied by Kollsman into an application filed October 27, 1932, for reissue of his patent No. 1,857,311, the original application for which was filed December 10, 1931. Urfer, being the junior party by approximately four months, was required to prove his case by a preponderance of the evidence.

The three counts involved follow:

"1. An altimeter including a pressure-sensitive element, movable pointers operated by said element in different ratios, rotatable dials cooperating with said pointers for indicating action, stationary reference means cooperating with the dials for indicating a predetermined condition, and means for rotating said dials with respect to said pointers and reference means for setting the altimeter for the predetermined condition.

"2. An altimeter including a pressure-responsive element, a plurality of pointers operated by said element, rotatable dials for the respective pointers, reference means for the respective dials, separate scales on each of said dials, one of the scales on each dial cooperating with its respective pointer for indicating action, another of the scales on each of said dials cooperating with the reference means for setting, and means for rotating said dials in different ratios with respect to said pointers and reference means to set the altimeter for a predetermined condition.

"3. An indicating instrument including an actuating device, movable pointers operated by said device in different ratios, rotatable dials rotatable with respect to said pointers, stationary reference means cooperating with the dials for indicating a predetermined condition for which the instrument is adapted to be set, and means for rotating said dials with respect to said pointers and reference means for setting the instrument for the predetermined condition so that the reference means indicate the predetermined condition and so that such a relation is established between the pointers and the dials that the pointers will produce a desired indication when the predetermined ·condition occurs."

The subject matter of the interference is an indicator especially useful as an altimeter having a pressure-sensitive element with movable pointers operated by said element in different ratios. The subject matter in issue may be considered practically a reversal of the operation of the Kollsman indicator shown in his patent No. 1,-741,702 as far as the preliminary setting is concerned. In that patent is described means for initially positioning certain reference marks related to two different scales respectively in order to indicate to one in an airship in which the altimeter is positioned, his proximity to a landing field distant from the field from which the airship has started. In the interference issue, instead of moving the reference marks in reference to fixed scales, they remain stationary and the dials on which the scale markings are placed move relative to the reference marks. Counts 1 and 2 in issue each call for an altimeter in the introductory clause, the instrument being provided with the pointers, dials, reference means and rotating means for the dials referred to above, count 2 differing from counts 1 and 3 in that it requires two scales on each dial. Count 3 is similar to count 1 except that it calls for an "indicating instrument" instead of an "altimeter" as does count 1. Count 3 calls broadly for all the elements contained in count 1.

Both parties took testimony. The Examiner of Interferences held, and the board affirmed his holding for substantially the same reasons, that the Kollsman proof established a conception of the invention in 1930, prior to the earliest date alleged by Urfer, and restricted Kollsman to his filing date, December 10, 1931, for reduction to practice. The proof of Kollsman relating to his conception of the invention will be discussed hereinafter.

Urfer alleged in his preliminary statement a conception date in July 1931. In support of this date a blueprint, Exhibit 1, and a letter, Exhibit 2, from Urfer to one Cerstvik, his attorney, were offered in° evidence. This letter was dated July 13, 1931. Upon receipt of the letter and blueprint from Urfer, Cerstvik on July 28, 1931, wrote a letter, Exhibit 3, to Urfer and asked for a detailed description of the construction and operation of the structure shown by the exhibits. On July 29, 1931, Urfer wrote to Cerstvik a letter, Exhibit 4, setting forth the construction and operation of the mechanism shown in Exhibit 1. The blueprint was made from a drawing executed by one Ashton, a designer for the Pioneer Instrument Company. Urfer introduced a number of other exhibits bearing on the invention.

Urfer's Exhibit A was not introduced in evidence. Urfer's attorney stated upon the record that Exhibit A consisted of ·working drawings and that they were not introduced in evidence because "we do not wish to have copies of working drawings in the hands of a competitor. They have been made available here at this hearing and can be inspected further by Mr. Day [Kollsman's counsel] if he wishes." This exhibit was referred to by Urfer and three of his witnesses and their testimony is to the effect that these working drawings, and the altimeter made in accordance therewith and sent to Wright Field in November, 1931, to be tested by the Army, contained or disclosed the elements of all the counts of this interference. It was definitely stated that Exhibit A and the altimeter made in accordance therewith showed two scales on each dial. Considerable controversy arises over the consideration of this exhibit and the Examiner of Interferences ruled that since it was not introduced in evidence no consideration could be given the testimony which depended on this exhibit. The board took a view somewhat different from that of the examiner with reference to this exhibit and said:

"* * * However, we note the holding of the examiner as to Exhibit A. Inasmuch as one of the witnesses testified that an instrument was sent by Urfer's assignee to the Wright field for test, built in accordance with Exhibit A, we consider the excuse for failure to offer Exhibit A in evidence insufficient. Appellant urges that

Exhibit A shows production drawings for their instrument and he is averse to presenting his opponent with such drawings. Inasmuch as the instruments sent to the Wright field are not in evidence and the descriptions of these instruments were given by witnesses some years after they were tested, we believe the normal course would have been to introduce this exhibit in the record, if pertinent. The failure to introduce this exhibit might even tend to the assumption that the exhibit does not disclose an instrument coming within the issue of this interference. But Kollsman's attorney had access to these drawings and did not raise this question."

It is claimed by Urfer that an instrument built in accordance with Exhibit 1, except that the dials were eccentric and not concentric, was sent by Urfer's assignee to Wright Field, Dayton, Ohio, for a test by the Army in September, 1931. This first instrument was provided with two eccentric and adjustable dials, two pointers, two fixed reference marks, and a single scale on each dial, together with adjusting means for the dials, as called for by counts 1 and 3. Appellant admits that this instrument did not embody a plurality of scales on each dial as required by count 2. There is no question but that the instrument was tested by the Army. The altimeter was returned from Wright Field for the reason that it was inaccurate at high altitudes. Soon thereafter, in November, 1931, a second instrument was constructed and sent to Wright Field. We think the record shows that this instrument corresponded to the counts involved. No report from those who tested it for the Army as to whether it was satisfactory or not has been introduced into the record. At any rate it was not accepted by the Army, and Urfer offers as an excuse for its not being accepted that some sealing compound or cement on the inside of the mechanism had worked loose and gotten into the gear train which stopped the same from working properly at a certain altitude.

We are of the opinion that Urfer has proved a conception date for counts 1 and 3 as early as July, 1931, and of count 2, which calls for two scales on each dial, as early as November, 1931, when he sent the second altimeter to Wright Field. After carefully reviewing Urfer's record, we think it does not establish a reduction to practice by him until his filing date of April 6, 1932.

We will next consider Kollsman's case. Kollsman filed his original application which discloses the invention of the counts on December 10, 1931. He does not rely upon this date for a conception but relies upon it only for reduction to practice, and the tribunals below accorded him this date for reduction to practice. Under the above statement of facts, unless Kollsman has proved a conception date prior to that of Urfer, or unless it is disclosed that Urfer was not diligent from immediately prior to the entrance of Kollsman into the field until the date Urfer filed his application, priority, upon the instant record, should be awarded to Urfer.

Kollsman offered the testimony of three witnesses, including himself. He depended entirely upon oral testimony to prove his alleged date of conception. He introduced as exhibits copies of three prior patents, and the testimony was taken approximately five years after the alleged events relied upon for proof of conception. Kollsman testified that he stated to his attorney, Schumacher, in the presence of his employee, Angst, that it was possible to move the scale instead of moving the reference marks and that it would be unnecessary to rotate the pointers for the setting action. It is pointed out by Kollsman that the variation in the construction defined by the counts over that disclosed in the Kollsman patent is not great, and it was thought by the board that men skilled in this field would, during the preparation of the Kollsman patent applications, have discussed such a modification. Schumacher and Angst both testified that Kollsman mentioned the foregoing facts to Schumacher. The testimony of all three of these witnesses is so indefinite and uncertain that we do not believe it satisfactorily proves a date of conception of the structure defined by the counts at bar.

Kollsman set out in his preliminary statement that he had records available showing that he made drawings of the invention involved herein in 1929, and yet no sketch was introduced. Kollsman testified that he was not sure that his talk with Schumacher and Angst was in 1928 or 1929. He had no way of fixing the date and he definitely stated that he did not remember any specific date.

Schumacher was also equally indefinite. When questioned specifically as to how the scales were to be constructed, he replied: "Mr. Kollsman took a very broad and gen-

eral attitude as to scales," although he had previously stated that Kollsman did not tell him "anything about how the scales should be on the two movable dials." As illustrative of the nature of Schumacher's testimony we quote the following: "I recall no date; except that it was prior to the filing of the first reissue [December 22, 1930]." Later he testified:

"XQ. 49. That is a very long time ago, is it not, Mr. Schumacher? A. I realize that.

"XQ. 50. Is it not true that a man's memory gets pretty defective after a year or two? I know mine always does. A. I fully agree with you.

"XQ. 51. You have handled several altimeter cases for Mr. Kollsman, have you not? A. Yes; and the work in connection with these reissues was always very strenuous and done under considerable pressure.

"XQ. 52. You have handled several reissues for him, have you not? A. Yes, sir."

Angst, an employee of Kollsman, was asked: "Q. 27. When did you first hear about moving two dials in setting in ratio of the motion of the two pointers?" He answered: "A. Well, at the very beginning. As late as 1928 or early 1929, when we first started to work on sensitive altimeters."

In explaining why no sketches were introduced, Angst gave the following testimony:

"R.D.Q. 65. Mr. Angst, you were asked by Mr. Smith about some sketches. You said you did not have them with you. Please explain what became of these sketches and how they were made. A. Oh, those sketches were made on the impulse of the moment, at the very moment. We never made a record of them, nor did we keep complete ones, because we did not have the time to do it. We tore them up. Some of those sketches were made at home, on magazine covers or just the paper which was handy.

"R.D.Q. 66. You are referring, now, to the sketches of the two movable dials; is that right? A. Yes; all the sketches that we made at that time, of various designs for a sensitive altimeter."

Appellant claims that Kollsman received the invention from him, and Kollsman, in turn, contends that Urfer was spurred into patent activity by knowledge of Kollsman's reissue patents. There seems to have been opportunities for either of these things to have happened, but there is no evidence to that effect. For the reasons heretofore stated, we hold that Kollsman is not entitled to any earlier date for conception and reduction to practice than the filing date of his patent No. 1,857,311—December 10, 1931.

Urfer, as above stated, is entitled to a conception date prior to that of Kollsman. While there is evidence that devices responsive to the counts had been given tests in the laboratory and in an elevator, there is no satisfactory evidence that any successful device had been constructed by Urfer prior to his filing date. In view of our conclusion that Urfer was first to conceive and was diligent in reducing his invention to practice, it is not necessary to pass upon the question as to whether or not the tests made of any Urfer device were sufficient to constitute a reduction to practice of the invention of any of the counts.

Urfer, being first to conceive, in order for him to be entitled to priority, was required to show that he was diligent from just prior to the time that Kollsman entered the field on December 10, 1931, to his own filing date—April 6, 1932. We think that the record sufficiently shows that Urfer's activities, immediately prior to the entrance of Kollsman into the field, and from that period until April 6, 1932 (Urfer's filing date), were such as to show diligence towards perfecting the invention and filing an application for patent for the same. During this period he was interested in the Army tests as is above set out. Kollsman has not here contended that Urfer was not diligent during the critical period.

We therefore hold that the Board of Appeals was in error in affirming the decision of the Examiner of Interferences in awarding priority to Kollsman. Priority should have been awarded to Urfer and the decision of the Board of Appeals is reversed.

Reversed.

LENROOT, Associate Judge, dissents.